COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Salem, Virginia


SHERWOOD ANTANIO CHARLTON
                                              OPINION BY
v.    Record No. 2989-98-3          JUDGE MARVIN F. COLE
                                            MARCH 21, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    Richard S. Miller, Judge

        Michael T. Garrett (Pendleton, Garrett &
        Henderson, P.C., on brief), for appellant.

        Marla Graff Decker, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


    Sherwood Antanio Charlton, appellant, was convicted of use of

a firearm in the commission of robbery.  On appeal, he contends

the trial court erred in denying his motion to dismiss the use of

a firearm charge because he was an accessory before the fact to

robbery and did not know the principals would use a firearm in the

commission of the robbery.  Finding no error, we affirm the

conviction.

    Viewing the evidence in the light most favorable to the

Commonwealth, see Archer v. Commonwealth, 26 Va. App. 1, 11, 492

S.E.2d 826, 831 (1997), the evidence showed that appellant worked

at a fast-food restaurant.  Three men approached him and told him

they intended to rob the restaurant.  They offered him money to

allow them to "rough him up" as they "forced" their way into the restaurant to rob it. Instead, appellant proposed, and they all agreed, that appellant would leave the back door ajar during a certain week so the three men could enter without confrontation.

On the night of the robbery, appellant worked with Nicholas Balasic, the assistant manager. Appellant advised Balasic that he was going outside to break down some boxes for trash removal. Appellant left the back door propped open according to the plan. Balasic testified that it was restaurant policy that employees going out the back door should shut it. Because the door locked when shut, no one could enter unannounced or without permission. While appellant worked outside, the three men entered the restaurant and robbed the manager at gunpoint. Appellant did not know the robbery occurred until after it was committed and the men were gone. The principals later gave appellant $270 to $300 from the proceeds of the robbery.

A month later, appellant spoke with Lynchburg Police Investigator Booth about the robbery. Appellant told Booth about the three men who offered him money to assist in the robbery and how he suggested leaving the back door open. He told Booth he did not know a specific night when the robbery would occur, so for "a span of about five days . . . he propped the door open." He stated he did not know the robbers would use a firearm to commit the robbery.

Appellant concedes he acted as an accessory before the fact to robbery. "To be guilty of accessory before the fact, the accused must either know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime." McGhee v. Commonwealth, 221 Va. 422, 427, 270 S.E.2d 729, 732 (1980). Here, appellant encouraged and aided the principals in the commission of the robbery by planning the robbery of the restaurant, by propping the rear door open in order to permit entrance, and by sharing in the money that was stolen.

Appellant, however, argues he did not know when or how the principals would carry out the robbery and, therefore, he should not be accountable for their use of a firearm during the commission of the robbery. Code § 18.2-18 states that "every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree . . . ." (Emphasis added.) In Carter v. Commonwealth, 232 Va. 122, 348 S.E.2d 265 (1986), involving a robbery, murder, and use of a firearm, the Court held that

> each co-actor is criminally responsible for the shooting, even those who did not intend it or anticipate that it would occur. Because they shared the common intent to rob, they shared the common intent to commit all the elements of robbery, including the use of such force, violence, or intimidation as would be expedient for the accomplishment of their purpose. . . . [E]ach co-actor is

> responsible for the acts of the others and
> may not interpose his personal lack of intent
> as a defense.

Id. at 126, 348 S.E.2d at 267-68.

Appellant attempts to distinguish Carter because Carter was a principal in the second degree and was present during the commission of the crimes, whereas appellant was an accessory before the fact and, therefore, was not present. Appellant claims he was not a "co-actor" or one who acted in concert with the principals.

"Concerted action is defined as '[a]ction that has been planned, adjusted, agreed on and settled between parties acting together pursuant to some design or scheme.'" Rollston v. Commonwealth, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991) (citation omitted). Here, appellant rejected the principals' original plan to "rough him up" upon their entrance. Appellant offered the alternative plan of leaving the back door open to allow the principals easy access to the restaurant. Further, he left the door open for several days in anticipation that the robbery would occur. After the robbery, appellant met with the principals and received a portion of the proceeds of the robbery in payment for his participation. Appellant acted in concert with the principals by planning, adjusting and agreeing on a course of action and performing his role to consummate the crime.

That appellant was not present inside the restaurant during the commission of the robbery, and did not concern himself with

- 4 -

the details of the robbery, does not relieve him of responsibility for the actions taken by his confederates to consummate the crime. The Supreme Court of Virginia has not distinguished between accessories before the fact and principals in the second degree in assigning criminal responsibility. In Rollston this Court stated that

> "[a]ll those who assemble themselves together with an intent to commit a wrongful act, the execution whereof make probable, in the nature of things, a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime . . . . Hence, it is not necessary that the crime should be a part of the original design; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose."

Id. at 542, 399 S.E.2d at 827 (quoting Brown v. Commonwealth, 130 Va. 733, 738, 107 S.E. 809, 811 (1921)). See also Carter, 232 Va. at 126-27, 348 S.E.2d at 268; Boggs v. Commonwealth, 153 Va. 828, 836, 149 S.E. 445, 447 (1929) ("'[E]veryone connected with carrying out a common design to commit a criminal act is . . . bound by the act of any member of the combination, perpetrated in the prosecution of the common design. But it is not necessary that the crime committed shall have been originally intended.'" (citation omitted)).

In Spradlin v. Commonwealth, 195 Va. 523, 79 S.E.2d 443 (1954), the Court stated that

> [i]f there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

Id. at 527, 79 S.E.2d at 445.

When imposing responsibility for the intended crime and any incidental and probable crimes that result from the consummation of the intended crime, the Supreme Court has consistently referred to all the participants in a crime without distinguishing between principals in the first degree, principals in the second degree, and accessories before the fact. Here, appellant helped plan the robbery by deciding on the means of entry, participated in the crime by leaving the door open, and received a portion of the proceeds for his role in the robbery. He knew some force, violence or intimidation was necessary to accomplish the robbery, and the principals' use of a firearm was a natural and probable consequence of performing a robbery.

Code § 18.2-18 makes no exception for those who plan a crime, do not involve themselves with the details of its execution, and are not present for its consummation. The statute and the cases direct that an accessory before the fact is accountable in all respects as the principal who carries out the intended crime, as well as any of its natural, probable, and incidental crimes.

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>